**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES OF AMERICA

v.

CRIMINAL CASE NO.

1:17-cr-00183-MHC-RGV

JEFFREY EVERETT ROBERTS

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendant Jeffrey Everett Roberts ("Roberts") is charged in a two-count superseding indictment with using a facility and means of interstate commerce to knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of 18 to engage in sexual activity for which he could be charged with a criminal offense, that is, child molestation, in violation of 18 U.S.C. § 2422(b), and knowingly possessing a computer, which contained at least one visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).  [Doc. 26].[1]  Roberts has filed a motion to dismiss count one of the superseding indictment, [Doc. 32], and a motion to dismiss the charges against him due to the government's destruction of exculpatory evidence, [Doc. 33], both of

_____

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

which the government opposes, [Docs. 37 & 38].  For the reasons that follow, it is

**RECOMMENDED** that Roberts' motions to dismiss, [Docs. 32 & 33], be **DENIED**.

## I.  STATEMENT OF FACTS

On May 5, 2017, Federal Bureau of Investigation ("FBI") Special Agent Keith Kabrhel ("Agent Kabrhel") executed an affidavit in support of a criminal complaint for a warrant to arrest Roberts.  [Doc. 1].  In this affidavit in support of the criminal complaint, Agent Kabrhel explained that on April 17, 2017, an FBI Online Covert Employee ("OCE") posted an advertisement on Craigslist entitled "Taboo for you–W4M."  [Id. at 3 ¶ 4 (internal marks omitted)].  The advertisement specifically stated: "We are new to town but the time is right to find a taboo teacher. Looking for an experienced taboo (daddy/daughter or maybe grandpa or Uncle?) so let's start with what your experience, if you sound like what I am looking for then we can go from there."  [Id. at 3-4 ¶ 4 (internal marks omitted)].  On April 20, 2017, the OCE received an email from an individual, later identified as Roberts, which stated, "Experienced, very patient, WM here.  You need a teacher?  I might be able to provide the lessons."  [Id. at 4 ¶ 5 (internal marks omitted)].

Agent Kabrhel then detailed the communications that ensued between the OCE and Roberts from April 20 though May 3, 2017.  [Id. at 4-7 ¶¶ 6-18].  In particular, he relayed that the OCE responded to Roberts' email, stating that she

needed a teacher for someone and asking his age preference. [Id. at 4 ¶ 6]; see also [Doc. 37 at 1; Doc. 38 at 1]. Roberts responded that he "can be flexible, but [he] ha[s] a preference for 8-12." [Doc. 1 at 4 ¶ 7 (internal marks omitted)]. The OCE informed Roberts that she was looking for her daughter, who was 12. [Id. at 4 ¶ 8]; see also [Doc. 37 at 1; Doc. 38 at 1]. The email exchange moved to Kik Messenger ("Kik"), an Internet-based instant messaging application that allows users to communicate as well as send attachments containing videos or photographs. [Doc. 1 at 5 ¶ 10]. Roberts asked the OCE if her daughter had started puberty, and she said no and ask if it mattered, to which he responded, "It might. Depends on if you want condoms." [Id. at 5 ¶ 11 (internal marks omitted)]; see also [Doc. 37 at 1-2; Doc. 38 at 1]. He also described a previous experience with a 10-year-old girl that required him to "move slowly" and commented that it "took almost two months to get to penetration." [Doc. 1 at 5 ¶ 12 (internal marks omitted)]; see also [Doc. 37 at 2; Doc. 38 at 1-2]. The communications continued, [Doc. 1 at 5-6 ¶¶ 13-15], and Roberts ultimately communicated with "Emily," the purported 12-year-old daughter of the OCE, over Kik, [id. at 6 ¶ 16]. During the exchange with Emily, Roberts initiated sexual dialogue regarding her "girl parts" and asked what she wanted him to teach her the first time he came over. [Id. 6-7 ¶ 17]. On May 3, 2017, Roberts stated that he planned to meet the OCE and Emily after work on May 4, 2017, and that he was "not

putting that much pressure on getting too much done all in one night." [Id. at 7 ¶ 18 (internal marks omitted)].

On May 4, 2017, Roberts traveled from his place of employment to the designated meeting location and was arrested upon his arrival at approximately 5:53 p.m, at which time several electronic devices were seized, including a laptop and cell phone.[2] [Id. at 7 ¶ 19]; see also [Doc. 38 at 2]. On May 24, 2017, a federal grand jury in the Northern District of Georgia returned a one-count indictment, charging Roberts with using a facility and means of interstate commerce to knowingly attempt to persuade, entice, and coerce a minor to engage in illicit sexual activity, in violation of 18 U.S.C. § 2422(b). [Doc. 11]. Following the search of Roberts' laptop that was seized on the day of his arrest, a federal grand jury in the Northern District of Georgia returned a superseding indictment on August 22, 2017, adding a count of knowingly possessing a computer containing at least one visual depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). [Doc. 26]. Roberts has filed a motion to dismiss count one, [Doc. 32], and a motion to dismiss the charges against him due to the government's destruction of exculpatory evidence, [Doc. 33], both of which the government opposes, [Docs. 37

---

[2] The government reports that Roberts' "iPhone has not yet been forensically extracted due to technical limitations." [Doc. 32 at 2; Doc. 38 at 2].

& 38].  Roberts has filed replies in support of his motions, [Docs. 39 & 40], and the

pending motions are now ripe for ruling.

## II.  DISCUSSION

### A.  Motion to Dismiss Count One, [Doc. 32]

Roberts moves to dismiss count one of the superseding indictment, arguing

that 18 U.S.C. § 2422(b), "infringes upon [his] right to protected speech" and that

"this [C]ourt should strike down the statute as unconstitutional." [Doc. 32 at 1].[3]  In

particular, he asserts that § 2422(b) is overly broad because it allows a person's

"mere speech," in particular "fantasy role-play (where they believe they are

engaging with an adult pretending to be a child or an adult that has access to a fake

child) to serve as the sole basis for their conviction."[4]  [Id. at 7].  To support his

---

[3] Roberts "requests an evidentiary hearing on th[is] matter." [Doc. 32 at 7]; see also [Doc. 40 at 1, 11, 18].  "A party must make a showing as to why an evidentiary hearing is necessary."  United States v. Verch, 307 F. App'x 327, 330 (11th Cir. 2009) (per curiam) (unpublished) (citation omitted).  Roberts has failed to sufficiently show that an evidentiary hearing is necessary before the Court rules on his motion to dismiss count one, see [Doc. 32], and given that the undersigned finds his arguments are foreclosed by Eleventh Circuit precedent, his request for an evidentiary hearing is **DENIED**, see  United States v. Boldin, 772 F.2d 719, 732 (11th Cir. 1985) (finding magistrate judge did not err by not holding an evidentiary hearing on defendant's motion to dismiss certain counts because his arguments were foreclosed as a matter of law and "a factual determination [was] not necessary").

[4] Roberts also contends that § 2422(b) is unconstitutionally vague because "'attempt' has been interpreted [by the Eleventh Circuit] to include mere speech." [Doc. 32 at 7].  This argument appears to relate to his contention that the statute is overly broad, and not to a separate vagueness challenge, and thus, the Court will

contention, Roberts asserts that the "[Eleventh] Circuit, among others, has held that speech about molesting a child under 18 is, in [and] of itself, sufficient to satisfy the attempt element in the statute," and that because of such a broad interpretation, "an individual engaging in fantasy sexual role-play, with no actual intent to molest a child or intent to attempt to molest a child, can be arrested, indicted, and convicted based on their speech alone." [Id. at 6-7 (emphasis omitted) (citing United States v. Rothenberg, 610 F.3d 621, 627 (11th Cir. 2010))]. In response, the government asserts that Roberts' First Amendment arguments are foreclosed by Eleventh Circuit precedent, which Roberts has mis-characterized. [Doc. 38].

Section 2422(b) provides:

Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of

---

address his argument accordingly. See United States v. Woods, 684 F.3d 1045, 1057 (11th Cir. 2012) (per curiam) (citations omitted) ("A statute is void for vagueness if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.' A statute is facially overbroad if it prohibits a substantial amount of protected speech[.]"). However, to the extent Roberts intended to assert a vagueness challenge, this argument is without merit. See United States v. Rojas, 145 F. App'x 647, 649 (11th Cir. 2005) (per curiam) (unpublished) ("Section 2422(b) is not unconstitutionally vague. The statute clearly states the proscribed conduct . . . as using a facility of interstate commerce to entice a person under 18 years of age to engage in criminal sexual contact."); United States v. Panfil, 338 F.3d 1299, 1301 (11th Cir. 2003) (per curiam) ("We conclude that § 2422(b) is not unconstitutionally . . . vague."); see also United States v. Gagliardi, 506 F.3d 140, 148 (2d Cir. 2007) ("[B]ecause the statute's terms are sufficiently unambiguous, we conclude that § 2422(b) is not unconstitutionally vague[.]").

the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C. § 2422(b). Roberts argues that § 2422(b) is overly broad in that an attempt conviction can result from mere speech and fantasy role-playing, [Doc. 32 at 6-7], but he "points to no case in which a court presented with an overbreadth . . . challenge to § 2422(b) has deemed the statute unconstitutional," United States v. Thomas, 410 F.3d 1235, 1243-44 (10th Cir. 2005) (footnote and citations omitted).[5]

"The overbreadth doctrine prohibits the [g]overnment from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process," Ashcroft v. Free Speech Coal., 535 U.S. 234, 255 (2002),[6] but

---

[5] Roberts cites United States v. Gladish, 536 F.3d 646 (7th Cir. 2008), to support his assertion that other circuits have stated that attempt liability should not be construed broadly. [Doc. 40 at 14-16]. "The Seventh Circuit in Gladish did not address a constitutional challenge to Section 2422(b), but rather opined on the requirement that the defendant take a 'substantial step' toward completion of the offense to be found guilty of attempt." United States v. Hite, 896 F. Supp. 2d 17, 22 (D.D.C. 2012). "What constitutes a substantial step for purposes of attempted enticement is irrelevant to the question of whether or not the statute criminalizes a substantial amount of protected speech." Id.

[6] "The [overbreadth] doctrine seeks to strike a balance between competing social costs." United States v. Williams, 553 U.S. 285, 292 (2008) (citation omitted). "One the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." Id. "On the other hand, invalidating a law that in some of its applications is perfectly constitutional–particularly a law directed at conduct so antisocial that

"there is no realistic danger that [§] 2422(b) . . . criminalizes protected speech,"

United States v. Dwinells, 508 F.3d 63, 70-71 (1st Cir. 2007). In fact, "[s]peech

attempting to arrange the sexual abuse of children is no more constitutionally

protected than speech attempting to arrange any other type of crime." United States

v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004); see also United States v. Howard,

766 F.3d 414, 430 (5th Cir. 2014) (agreeing with the Eleventh Circuit and rejecting

defendant's overbreadth challenge to § 2422(b) "because it does not criminalize

protected speech"); United States v. Friedlander, 395 F. App'x 577, 582 n.4 (11th Cir.

2010) (per curiam) (unpublished) (citations omitted) (rejecting defendant's argument

that § 2422(b) is unconstitutional because it "violates his right to free speech" as

"squarely [] foreclosed by [Eleventh Circuit] precedent"); United States v. Nilsen,

Criminal Case No. 1:10-CR-0308-JEC-JFK, 2011 WL 4404125, at *3 (N.D. Ga. Aug. 8,

2011), adopted by 2011 WL 4404123, at *1 (N.D. Ga. Sept. 21, 2011) (finding

defendant's argument that "§ 2422(b) is unconstitutional because it infringes on

protected speech expressed to another adult under the First Amendment" to be

"merit less and foreclosed by binding Eleventh Circuit Court of Appeals

---

it has been made criminal–has obvious harmful effects." Id. "In order to maintain
an appropriate balance, [the Supreme Court] ha[s] vigorously enforced the
requirement that a statute's overbreadth be *substantial*, not only in an absolute sense,
but also relative to the statute's plainly legitimate sweep." Id. (citations omitted).
"Invalidation for overbreadth is strong medicine that is not to be casually
employed." Id. (citation and internal marks omitted).

precedent"); <u>United States v. Bowden</u>, 1:09-cr-98-WSD, 2009 WL 10673251, at *2-3 (N.D. Ga. Oct. 2, 2009), <u>aff'd</u>, 420 F. App'x 907 (11th Cir. 2011) (per curiam) (unpublished). "And where, as in this case, speech is the instrumentality of the crime itself, the First Amendment provides no shelter from the government's exercise of its otherwise valid police powers." <u>Dwinells</u>, 508 F.3d at 71 (citations omitted) (citing <u>Hornaday</u>, 392 F.3d at 1311).

Moreover, it is Roberts' "burden as challenger to prove substantial overbreadth," <u>United States v. Dean</u>, 635 F.3d 1200, 1204 (11th Cir. 2011) (citing <u>Virginia v. Hicks</u>, 539 U.S. 113, 122 (2003)), and he has not established that § 2422(b) criminalizes a substantial amount of protected speech in relation to its plainly legitimate sweep. The overbreadth doctrine has "the tendency . . . to summon forth an endless stream of fanciful hypotheticals." <u>Williams</u>, 553 U.S. at 301. Roberts proposes such a hypothetical, in which an individual could be punished under the statute for using "the Internet as a forum to engage in fantasy chat communications with other consenting adults." [Doc. 40 at 16-18]. This hypothetical, however, does not implicate the statute because, as the government contends, [Doc. 38 at 5], the hypothetical individual does not intend to persuade, induce, entice, or coerce a minor to engage in unlawful sex, <u>see</u> <u>United States v. Murrell</u>, 368 F.3d 1283, 1286 (11th Cir. 2004) (noting that to obtain a conviction of attempt under § 2422(b), "the

government must first prove that [defendant], using the internet, acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex"); see also Williams, 553 U.S. at 301 (dismissing defendant's hypothetical as not implicating the statute because he did not have the requisite intent). Even assuming that Roberts could conceive of a hypothetical where § 2422(b) would prohibit some protected speech, as the government points out, he nevertheless cannot "satisfy the requirements for an overbreadth challenge." [Doc. 38 at 6]; see also Woods, 684 F.3d at 1060 (finding defendant's ability to identify "some problematic hypothetical applications of [the] statutes [that prohibit possession of child pornography]" was not sufficient for an overbreadth challenge because he had "not demonstrated that these applications [were] substantial in relation to the statutes' legitimate sweep"). "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" Williams, 553 U.S. at 303 (quoting Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984)). In fact, courts repeatedly have found that § 2422(b) presents no constitutional problems. See Howard, 766 F.3d at 429 (footnote omitted) (noting that the "circuits have unanimously upheld § 2422(b) over vagueness and overbreadth challenges").

In an attempt to support his claim that § 2422(b) is overly broad, Roberts asserts that the Eleventh Circuit "has held that speech about molesting a child under 18 is, in [and] of itself, sufficient to satisfy the attempt element in the statute[.]" [Doc. 32 at 7 (emphasis omitted) (citing Rothenberg, 610 F.3d at 627)]. Roberts, however, has misconstrued the holding in Rothenberg, a case in which the Eleventh Circuit considered "whether a sexually solicitous communication by means of interstate commerce, without more, can ever constitute a substantial step toward commission of an offense in violation of 18 U.S.C. § 2422(b) so as to complete the crime of attempt." Rothenberg, 610 F.3d at 626.[7] The Eleventh Court concluded that it could, reasoning that:

> [This] very issue was recognized and left undecided in *Murrell* . . ., but more recent decisions in our circuit have supplied an affirmative answer.
>
> In *Yost* the defendant had engaged in internet chat room conversations of a sexually explicit and solicitous nature with an undercover agent posing as three separate minor females. With respect to one of the three fictitious minors, the extent of the defendant's activity was limited to the chat room conversations; he had not traveled to a meeting or taken any other overt action, in addition to the

_____

[7] To establish an attempt as a crime, the government must prove: "(1) that the defendant intended to commit the underlying criminal offense with the requisite *mens rea*, and (2) that the defendant engaged in conduct which constituted a substantial step toward the commission of that crime and which strongly corroborates the defendant's criminal intent." Rothenberg, 610 F.3d at 626 (citing United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007) (per curiam); Murrell, 368 F.3d at 1286; United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001)).

conversations, to advance his predatory designs. Citing *United States v. Bailey*, 228 F.3d 637, 639–640 (6th Cir. 2000), and *United States v. Thomas*, 410 F.3d 1235, 1246 (10th Cir. 2005), the *Yost* court concluded that "[v]iewing the totality of Yost's actions, we . . . conclude that Yost crossed the line from mere 'talk' to inducement."

In *Lee*, a panel of this court affirmed a jury conviction for an attempted violation of § 2422(b) based upon the defendant's chat room and telephone conversations with an undercover agent posing as the mother of two daughters, ages 7 and 12. The court concluded that the jury could properly find the subject conversations to be a substantial step sufficient to support the attempt conviction.

We reach the same conclusion in this case. Whether a given activity or course of conduct amounts to a substantial step toward the commission of a crime is a question of fact that will vary from case to case depending not only upon the activity or course of conduct itself, but also upon the nature of the underlying offense to which the attempt is tied. Here, the very nature of the underlying offense–persuading, inducing or enticing engagement in unlawful sexual activity–necessarily contemplates oral or written communications as the principal if not exclusive means of committing the offense; and, ultimately, an individual evaluation by the fact finder of the defendant's intent as disclosed by his words or speech is necessary in every prosecution under § 2422(b). As we said in *Lee*, our aim is not to decide whether [the defendant's] conduct is at least as "criminal" as the conduct of others convicted under section 2422(b). Each of our precedents holds no more than that a reasonable jury could have found that the defendant at issue violated section 2422(b). Not surprisingly, none guesses at or purports to have identified the minimum conduct that section 2422(b) proscribes. In this case, Rothenberg's chats were specific instructions to adults with influence over young children; these graphic guides to sexual exploitation showed the adults both how, physically, to molest the children and how, emotionally, to persuade the children to comply with the abuse. Accordingly, the chats constituted "important action[s] leading to the commission" of inducing particular children to engage in illegal sexual activity.

We discern no clear error in the district court's finding that Rothenberg's chats crossed the line between sexual banter and criminal persuasion, inducement or enticement[.]

Id. at 626-27 (all but first and last alterations in original) (footnotes and internal citations omitted).

Contrary to Roberts' contention, the Eleventh Circuit did not rule in Rothenberg that speech alone is sufficient to satisfy the attempt element in § 2422(b). [Doc. 32 at 6-7]. Instead, the Eleventh Circuit found that a sexually solicitous communication can constitute a substantial step toward attempting a violation of § 2422(b), but explained that whether "a given activity or course of conduct amounts to a substantial step toward commission of a crime is a question of fact," Rothenberg, 610 F.3d at 626-27 (footnote omitted). "In order to prove an attempt to commit § 2422(b), the government must prove that (1) the defendant acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity, *and* (2) he took a substantial step toward the commission of the offense." United States v. Hardy, 520 F. App'x 835, 837 (11th Cir. 2013) (per curiam) (unpublished) (emphasis added) (citation omitted); see also United States v. Jockisch, 857 F.3d 1122, 1129 (11th Cir. 2017) (citations omitted); United States v. Syed, 616 F. App'x 973, 977 (11th Cir. 2015) (per curiam) (unpublished) (citation omitted). "Thus, the statute 'criminalizes an intentional attempt to achieve a mental

state–a minor's assent.'" <u>Hardy</u>, 520 F. App'x at 837 (citation omitted); <u>see also</u> <u>Rothenberg</u>, 610 F.3d at 627 ("[U]ltimately, an individual evaluation by the fact finder of the defendant's intent as disclosed by his words or speech is necessary in every prosecution under § 2422(b)."). Roberts' argument that Eleventh Circuit precedent allows for an attempt conviction on mere speech alone without the requisite intent is without merit. Because the Court finds that § 2422(b) is "not overbroad" and Roberts' "First Amendment argument with regard to § 2422(b) to be merit less and foreclosed by binding Eleventh Circuit Court of Appeals precedent," <u>Nilsen</u>, 2011 WL 4404125, at *3 (citation omitted); <u>see also</u> <u>Bowden</u>, 2009 WL 10673251, at *2-3, it is **RECOMMENDED** that his motion to dismiss count one, [Doc. 32], be **DENIED**.

## B.   <u>Motion to Dismiss Charges, [Doc. 33]</u>

Roberts also moves to dismiss count one of the superseding indictment "due to the [g]overnment's destruction of exculpatory chat/phone evidence of which the [g]overnment was aware but allowed to be destroyed" because the destruction of such evidence violates his due process rights. [Doc. 33 at 1].[8] He requests an evidentiary hearing on this motion, [<u>id.</u> at 3; Doc. 39 at 1], to "prove the materiality of the exculpatory Kik text message conversations . . . and whether the failure to

---

[8] Although the title of the motion refers to "charges," Roberts' argument only pertains to count one of the superseding indictment. [Doc. 33 at 1].

preserve resulted in a due process violation against [him]," [Doc. 39 at 6]. The government responds that Roberts' motion to dismiss and request for an evidentiary hearing are due to be denied because he cannot meet his burden to show the constitutional materiality of the evidence or that the government acted in bad faith. [Doc. 37 at 5-9].

"In criminal cases, courts have developed law regarding a defendant's 'constitutionally guaranteed access to evidence.'" United States v. McCray, 345 F. App'x 498, 501 (11th Cir. 2009) (per curiam) (unpublished) (quoting Arizona v. Youngblood, 488 U.S. 51, 55 (1988)). "That area of law includes claims, under *Brady v. Maryland*, 373 U.S. 83 . . . (1963), that the prosecution suppressed exculpatory evidence, as well as claims that the government destroyed potentially exculpatory evidence." Id. (citing Youngblood, 488 U.S. at 55-57). "In the latter cases, involving the destruction of evidence, a defendant's constitutional right to due process is violated only if the evidence was constitutionally material because it was likely to significantly contribute to his defense." Id. (citing United States v. Brown, 9 F.3d 907, 910 (11th Cir. 1993) (per curiam)). "'To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available

means.'"  United States v. Gayle, 608 F. App'x 783, 790 (11th Cir. 2015) (per curiam) (unpublished) (quoting California v. Trombetta, 467 U.S. 479, 488 (1984)).  "[F]ailure to preserve this potentially useful evidence does not violate [the] due process clause unless a criminal defendant can show bad faith on the part of the police."  Id. (alterations in original) (internal marks omitted) (quoting Illinois v. Fisher, 540 U.S. 544, 547-48 (2004)).  "Bad faith is present if the officer destroyed the evidence 'in a calculated effort to circumvent the disclosure requirements established by *Brady*[.]'" United States v. Cruz, 508 F. App'x 890, 901 (11th Cir. 2013) (per curiam) (unpublished) (quoting Trombetta, 467 U.S. at 488); see also Waterhouse v. Sec'y, Dep't of Corr., No. 8:12-CV-298-T-30MAP, 2012 WL 503842, at *10 (M.D. Fla. Feb. 15, 2012) (citation omitted) (noting the element of bad faith requires the defendant to "show that [the officer] was aware of the exculpatory value of the destroyed evidence and made a conscious effort to prevent [the defendant] from securing the evidence").

The evidence at issue consists of communications on Kik between Roberts and the OCE from April 23 though April 27, 2017, which were not successfully extracted from the OCE's phone.  The OCE prepared a report, which was provided to Roberts in discovery, memorializing the fact that certain Kik messages were not preserved

on her phone and summarizing the content of these messages as the OCE recalled them.  [Doc. 33 at 2; Doc. 37 at 3-4].

Roberts argues that count one of the superseding indictment should be dismissed due to the destruction of these Kik messages, [Doc. 33 at 1], but he "has not shown that the [government's] failure to preserve [these communications] deprived him of due process."  <u>Gayle</u>, 608 F. App'x at 790.  First, Roberts has "not established the materiality requirement, i.e., that the [unpreserved evidence] possessed an exculpatory value that was apparent prior to destruction, [and] that [he is] unable to obtain comparable evidence by other reasonably available means." <u>United States v. Green</u>, No. 2:12-cr-5-FtM-29CM, 2014 WL 1333197, at *3 (M.D. Fla. Apr. 3, 2014).  Roberts claims that "the missing chat communications contain exculpatory statements made by the agents who were conducting the chat conversations with [him] and by [him]" in that "these conversations evidence [his] belief that he was engaging in fantasy chat conversations with another consenting adult."  [Doc. 33 at 2]; <u>see also</u> [Doc. 39 at 5].  "Even if this Court assumes that the [missing chat communications] meet the first requirement of the <u>Trombetta</u>/<u>Youngblood</u> analysis," Roberts can "obtain[] comparable evidence by other reasonably available means."  <u>United States v. Fola</u>, CR. NO. 11-00506 LEK, 2015 WL 13322373, at *5 (D. Haw. Mar. 30, 2015) (citation and internal marks

omitted) (quoting <u>Trombetta</u>, 467 U.S. at 489). Roberts "himself [is] aware of the statements he made during the [unpreserved communications] with [the OCE], and his counsel ha[s] the opportunity to question [him if] he testifie[s] at trial." <u>Id.</u> In addition, as the government correctly contends, "the case agent will testify at trial regarding the content of the unpreserved communications and Roberts will have ample opportunity to explore his chosen defense through cross examination." [Doc. 37 at 7]; <u>see also</u> <u>Trombetta</u>, 467 U.S. at 490 (finding the defendants' right to cross-examine the law enforcement officer was an "alternative means of demonstrating their innocence"); <u>Cruz</u>, 508 F. App'x at 901 (holding "comparable evidence was offered to the court" in the form of the officer's testimony); <u>United States v. Revolorio-Ramo</u>, 468 F.3d 771, 774-75 (11th Cir. 2006) (finding defendants' "opportunity [to cross-examine the law enforcement officers who viewed the contents of the destroyed evidence], coupled with the testimony of the [defendants] . . . constitute[d] comparable evidence"); <u>Clarke v. Yates</u>, No. C 09-3232 CRB (PR), 2010 WL 5477686, at *15 (N.D. Cal. Dec. 30, 2010), <u>aff'd</u>, 550 F. App'x 481 (9th Cir. 2013) (unpublished) ("[C]omparable evidence was available to [defendant]" as he "was a party to a the conversation and was free to question either [detective] about the conversation at trial."). Moreover, the missing communications may be available

on Roberts' phone.[9]  See United States v. Harry, 816 F.3d 1268, 1278 n.3 (10th Cir. 2016) (citation omitted) (noting that "Defendant also did not show that he 'would be unable to obtain comparable evidence by other reasonably available means,' such as examining his own phone").

In addition, "there has been no evidence of bad faith by the government or any of its agents which resulted in the failure to preserve these [communications]." Green, 2014 WL 1333197, at *3; see also United States v. McMurphy, No. 1:08-cr-175-TFM [wo], 2009 WL 4042901, at *4 (M.D. Ala. Nov. 19, 2009).  Roberts argues that Kik "will delete messages once they reach 200 messages," that the "[g]overnment and its agents were aware of the software application's feature," and that the government "did not act timely enough to transfer the chat conversation from the Kik application to more permanent storage prior to them being deleted by the Kik software application."  [Doc. 33 at 2].  He further argues that the government's failure to preserve these communications indicates "a knowing failure on the part of the [g]overnment to preserve critical evidence."  [Id. at 3].  However, the actions of the government, as alleged by Roberts, "can at worst be described as

_____

[9] The government submits according to "publically available information on Kik's website, for chats older than 48 hours, the iPhone version of the app stores 500 messages where the Android app stores only 200 messages," and the OCE "was using an Android device, where as Roberts was using an Apple device."  [Doc. 37 at 5 (footnote omitted)].

negligent," Youngblood, 488 U.S. at 58, and "[m]ere negligence on the government's part in failing to preserve evidence is inadequate to show bad faith," Gordon v. Sec'y, Dep't of Corr., Case No: 2:14-cv-549-FtM-29CM, 2016 WL 1436600, at *5 (M.D. Fla. Apr. 12, 2016) (citing Youngblood, 488 U.S. at 58; see also Gayle, 608 F. App'x at 790 (finding defendant's allegation of "'gross negligence'" insufficient to show bad faith); United States v. Laughlin, Criminal Action File No. 1:10-CR-113-TWT/AJB, 2012 WL 3065404, at *35 (N.D. Ga. July 6, 2012), adopted by 2012 WL 3065527, at *1 (N.D. Ga. July 27, 2012) (citation omitted) ("Mere negligence in failing to preserve evidence is insufficient."). "As [Roberts] cannot show bad faith, [the Court] conclude[s] that the failure to preserve the [communications] was not a due process violation[.]" Gayle, 608 F. App'x at 790.

Roberts asserts that he is entitled to a hearing in order "to ascertain how and under what circumstances the [g]overnment lost and destroyed evidence in [his] case and whether it was a simple matter of negligence, gross negligence or intentional." [Doc. 39 at 1, 4]. But Roberts "is not[ ]entitled to an evidentiary hearing until he meets his burden of making a prima facie showing of entitlement to the relief he requests." United States v. Carlisle, No. 04-CR-055-C, 2004 WL 1246065, at *2 (W.D. Wis. May 28, 2004). Roberts "has to make a prima facie showing on all three elements[–that the evidence was exculpatory, that he cannot

obtain the evidence by other means, and that the government acted in bad faith–]before the government is obliged to bring in its witnesses." Id. As previously stated, even assuming the communications are potentially exculpatory, Roberts has not shown he is unable to obtain comparable evidence by other reasonably available means or that the government acted in bad faith in failing to preserve the Kik communications. As such, he is not entitled to an evidentiary hearing on his due process claim and cannot prevail on his motion to dismiss. Id. at *4; see also United States v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003) (citations omitted) (finding district court was "under no obligation to hold an evidentiary hearing" to determine "whether loss of the e-mail messages constituted a due process violation" and "acted well within its discretion when it decided not to hold an evidentiary hearing"); United States v. Brimage, 115 F.3d 73, 78 (1st Cir. 1997) (citation omitted) (rejecting claim that district court was obligated to hold an evidentiary hearing on the issue of bad faith as "[s]uch decisions are within the discretion of the district court"). Accordingly, it is **RECOMMENDED** that Roberts' motion to dismiss the charges against him due to the government's destruction of exculpatory evidence, [Doc. 33], be **DENIED**.

## III. CONCLUSION

For the forgoing reasons and cited authority, it is **RECOMMENDED** that Roberts' motions to dismiss, [Docs. 32 & 33], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 30th day of November, 2017.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE